UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street N.W., Suite 8700<br>Washington, D.C. 20530<br><br>*Plaintiff,*<br><br>v.<br><br>NEENAH ENTERPRISES, INC.<br>2021 Brooks Avenue<br>Neenah, WI 54956;<br><br>U.S. HOLDINGS, INC.<br>3200 W. 84th Street<br>Hialeah, FL 33018;<br><br>and<br><br>U.S. FOUNDRY AND<br>MANUFACTURING CORPORATION<br>8351 N.W. 93rd Street<br>Medley, FL 33166<br><br>*Defendants.* | |

# COMPLAINT

The United States of America ("United States"), acting under the direction of the Attorney General of the United States, brings this civil antitrust action against Defendants Neenah Enterprises, Inc. ("NEI"), U.S. Holdings, Inc., and its wholly-owned subsidiary U.S. Foundry and Manufacturing Corporation ("US Foundry"), to enjoin the proposed acquisition of US Foundry by NEI. The United States complains and alleges as follows:

I. **NATURE OF THE ACTION**

1. Pursuant to a purchase agreement dated March 9, 2021, NEI proposes to acquire substantially all of the assets of U.S. Holdings' subsidiary US Foundry for approximately $110 million. Today, the Defendants compete vigorously across several states in the design, production, and sale of gray iron municipal castings that are used as manhole covers and frames, grates, and drains.

2. NEI and US Foundry are two of only three significant suppliers of gray iron municipal castings in eleven eastern and southern states (collectively, and as defined in paragraph 15, *infra*, the "overlap states"). Competition between NEI and US Foundry has driven down prices, increased the quality, and reduced the delivery times for gray iron municipal castings sold in the overlap states. The proposed acquisition would eliminate this competition and likely lead to higher prices, lower quality, and slower delivery times.

3. As a result, the proposed acquisition would substantially lessen competition for the design, production, and sale of gray iron municipal castings in the overlap states in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

II. **DEFENDANTS AND THE TRANSACTION**

4. NEI is a corporation headquartered in Neenah, Wisconsin, that specializes in the design, production, and sale of gray and ductile iron castings at two foundries in Neenah, Wisconsin, and Lincoln, Nebraska. NEI's Lincoln foundry produces exclusively gray iron municipal castings. NEI also offers forging, machining, and assembly of key components for heavy truck, agriculture, and industrial uses. NEI had 2020 revenues of $343.3 million, of which approximately $152 million was derived from gray iron municipal castings.

5. U.S. Holdings, based in Hialeah, Florida, is a holding company with two major subsidiaries, US Foundry and Eagle Metal Processing and Recycling, Inc. US Foundry has one iron foundry located in Medley, Florida, that makes gray iron municipal castings. US Foundry had 2020 revenues of approximately $90 million, of which approximately $73 million was derived from gray iron municipal castings.

6. On March 9, 2021, NEI and U.S. Holdings signed an agreement under which NEI will acquire US Foundry and additional assets from U.S Holdings for $110 million.

## III. JURISDICTION AND VENUE

7. The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

8. Defendants design and produce gray iron municipal castings for manhole covers and frames, grates, and drains, sold for use throughout several of the United States, and their activities in these areas substantially affect interstate commerce. This Court therefore has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

9. Defendants have consented to venue and personal jurisdiction in this judicial district. Venue is therefore proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b) and (c).

## IV. GRAY IRON MUNICIPAL CASTINGS

### A. Background

10. Gray iron municipal castings are molded iron products produced at iron foundries and include products such as manhole covers and frames, drainage grates, inlets, and tree grates.

Many of these castings are used by governmental and private customers to provide access to subterranean utility systems such as those for gas, sewage, and water management, and as such, these castings are necessary components for construction and infrastructure projects.

11. Gray iron municipal castings are customized to a purchaser's specifications for the physical characteristics of these products, including strength, width, length, and any distinguishing marks, such as municipal logos. Customer specifications are used by the manufacturer to make a reusable pattern that is an exact replica of the final product. During the casting process, reusable patterns are pressed into a sand mold box to create an impression in the sand. After the pattern is removed, molten iron is poured into the sand mold to create the casting. The casting is then removed, cooled, and finished by shot-blasting or other machining before being shipped to the customer.

12. Gray iron municipal castings are used most often in construction and infrastructure projects, with smaller volumes used for maintenance or repair purposes. A state department of transportation ("DOT"), county, or municipality typically determines the specifications of the gray iron municipal castings that can be used in projects within its authority. Municipalities and counties often adopt the relevant DOT's technical specifications, and commercial projects may choose to adopt DOT specifications even when not required. A DOT, county, or municipality also may have a qualified product list that identifies approved patterns and manufacturers for specific gray iron municipal castings.

  **B.**  **Relevant Product and Geographic Market**

    1.  **Product Market: Gray Iron Municipal Castings**

13. There are no functional or economic substitutes for gray iron municipal castings, which are customized according to unique specifications designed to meet the customer's goals

of subterranean access or water drainage as part of an integrated and possibly complex public infrastructure project. For example, a state DOT will specify the exact dimensions and structural requirements of each casting for all DOT construction products. Other customers, such as counties or municipalities within a state, will often use state DOT specifications for size and structural integrity, but will further customize their gray iron municipal castings by including the town name or other distinguishing marks on the casting or by specifying custom shapes for lifting holes. These customer-specified requirements mean that gray iron municipal castings made for a particular project or municipality typically cannot be used on other projects or in other areas.

14. Because there are no reasonable substitutes for gray iron municipal castings, a hypothetical monopolist of gray iron municipal castings could profitably impose a small but significant increase in price without losing significant sales to alternative products. The sale of gray iron municipal castings therefore constitutes a line of commerce within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

### 2. Geographic Market: Overlap States

15. In Alabama, Florida, Georgia, Indiana, Maryland, New Jersey, New York, North Carolina, South Carolina, Tennessee, and Virginia (the "overlap states"), both NEI and US Foundry have committed significant capital to develop the specific patterns for gray iron municipal castings used by customers in those states and have made substantial investments to develop an efficient distribution network in those states for their gray iron municipal castings.

16. Because the custom design of a casting means a buyer cannot successfully use gray iron municipal castings designed for projects outside the overlap states for projects within the overlap states, customers cannot buy gray iron municipal castings designed for projects

outside the overlap states to avoid a higher price charged by foundries designing castings for projects within the overlap states.

17. A hypothetical monopolist of gray iron municipal castings sold to customers in the overlap states could thus profitably impose a small but significant increase in the price of gray iron municipal castings without losing significant sales to product substitution or arbitrage. The sale of gray iron municipal castings to customers in the overlap states therefore constitutes a relevant market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## V. ANTICOMPETITIVE EFFECTS OF THE PROPOSED TRANSACTION

18. NEI and US Foundry compete for sales of gray iron municipal castings primarily on the basis of price, quality, and speed of delivery. This competition has resulted in lower prices, higher quality, and shorter delivery times. This competition has been particularly important for customers in the overlap states where NEI and US Foundry compete vigorously today.

19. In the overlap states, NEI and US Foundry have developed hundreds of approved designs and patterns and are two of only three firms with a significant presence in the design, production, and sale of gray iron municipal castings. Both firms consistently bid on customer contracts in the overlap states, and customers use the competition between the two firms to obtain lower prices, higher quality, and shorter delivery times.

20. While other firms occasionally compete for contracts in the overlap states, these fringe competitors typically have a small presence and are unlikely to replace the competition lost as a result of the proposed transaction. In particular, other than NEI, US Foundry, and one other firm, smaller competitors have not invested the time and money to develop, seek approval for, and produce the hundreds of patterns necessary to compete for projects in the overlap states

nor have they invested in distribution for castings within those states. As a result, these smaller competitors are severely disadvantaged because they cannot price competitively due to the fact that they must first design and seek approval for new patterns in order to bid for projects in the overlap states, and they cannot deliver gray iron municipal castings in as timely a manner as NEI and US Foundry.

21. Because of the limited competitive significance of these fringe participants, a merged NEI/US Foundry would be faced with only one significant alternate supplier in the overlap states. Faced with limited competition, the merged firm likely would have the incentive and ability to increase prices, lower quality, and increase delivery times. The proposed acquisition, therefore, likely would substantially lessen competition in the design, production, and sale of gray iron municipal castings in the overlap states in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## VI.  Difficulty of Entry

22. New production facilities, sales infrastructure, and distribution networks for gray iron municipal castings require a substantial investment in both capital equipment and human resources. To be competitively viable, a new entrant would need to construct a foundry or establish production lines at an existing foundry capable of manufacturing the castings, as well as establish a system of regional distribution. This process would be capital intensive and likely take years to complete.

23. Similarly, a firm currently making gray iron municipal castings for use outside the overlap states is unlikely to expand into the overlap states. This is because such an entrant would not have proven or approved designs and patterns or established local distribution. It is highly unlikely that new entrants or firms thinking of geographic expansion would invest the time and

money needed to create a portfolio of new, as-yet unapproved designs and patterns of sufficient scale to compete in the overlap states on the speculative possibility of attracting enough new business to justify the investment.

24. As a result, entry or expansion into the market for gray iron municipal castings in the overlap states would not be timely, likely, or sufficient to defeat the anticompetitive effects likely to result from the combination of NEI and US Foundry.

## VII. VIOLATIONS ALLEGED

25. NEI's proposed acquisition of US Foundry likely would substantially lessen competition in the design, production, and sale of gray iron municipal castings in the eleven overlap states listed above, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

26. Unless enjoined, the proposed acquisition would likely have the following anticompetitive effects, among others, related to the relevant market:

   a. a substantial lessening of competition for gray iron municipal castings in the overlap states;

   b. an elimination of actual and potential head-to-head competition between NEI and US Foundry for the design, production, and sale of gray iron municipal castings in the overlap states; and

   c. prices for gray iron municipal castings in the overlap states would increase, the quality of those castings would decrease, and delivery times would increase.

## VIII. REQUEST FOR RELIEF

27. The United States requests that this Court:

   a. adjudge and decree NEI's proposed acquisition of US Foundry to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

    b.  preliminarily and permanently enjoin and restrain Defendants and all persons acting on their behalf from consummating the proposed acquisition of US Foundry by NEI, or from entering into or carrying out any other contract, agreement, plan, or understanding which would combine US Foundry's gray iron municipal castings business with NEI;

    c.  award the United States its costs for this action; and

    d.  award the United States such other and further relief as the Court deems just and proper.

Dated: October 14, 2021

Respectfully submitted,

COUNSEL FOR PLAINTIFF UNITED STATES:

    /s/ Richard A. Powers
RICHARD A. POWERS
Acting Assistant Attorney General
Antitrust Division

    /s/ Kathleen S. O'Neill
KATHLEEN S. O'NEILL
Senior Director of Investigations and Litigation
Antitrust Division

    /s/ Jay D. Owen
JAY D. OWEN
Acting Chief
Defense, Industrials, and Aerospace Section
Antitrust Division

    /s/ Soyoung Choe
SOYOUNG CHOE
Acting Assistant Chief
Defense, Industrials, and Aerospace Section
Antitrust Division

    /s/ Bashiri Wilson
*BASHIRI WILSON (D.C. Bar # 998075)
JAMES K. FOSTER
KERRIE J. FREEBORN
Trial Attorneys

Defense, Industrials, and Aerospace Section
Antitrust Division
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 476-0432
Email: bashiri.wilson@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED